**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| CANON INC.,<br><br>Plaintiff,<br><br>v.<br><br>COLOR IMAGING, INC. and GENERAL PLASTIC INDUSTRIAL CO., LTD.,<br><br>Defendants. | CASE NO. 1:11-cv-03855-AT |

**DEFENDANTS' REDACTED OPPOSITION TO PLAINTIFF CANON INC.'S MOTION FOR SUPPLEMENTAL DAMAGES, PREJUDGMENT INTEREST, AND POST-JUDGMENT INTEREST**

Pursuant to this Court's Order (D.I. 652), Defendants General Plastic Industrial Co., Ltd. ("GPI") and Color Imaging, Inc. ("CI") (collectively "Defendants") submit the following Opposition to Plaintiff Canon Inc.'s Motion for Supplemental Damages, Prejudgment Interest, and Post-Judgment Interest, showing this Court as follows.

## TABLE OF CONTENTS


Table of Authorities ........................................................................................ ii

Preliminary Statement..........................................................................................1

Argument...............................................................................................................2

I. The Supp. Damages Motion Overstates Canon's Damages. ............................2

II. The Supp. Damages Motion Overstates Canon's Prejudgment Interest...........4

Conclusion ............................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*,
807 F.2d 964 (Fed. Cir. 1986) ....................5, 8

*General Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983)....................4, 5, 8

*Krippelz v. Ford Motor Co.*,
670 F. Supp. 2d 815 (N.D. Ill 2009)....................6

*Laitram Corp. v. NEC Corp.*,
115 F.3d 947 (Fed. Cir. 1997) ....................9

*Lam, Inc. v. Johns-Manville Corp.*,
718 F.2d 1056 (Fed. Cir. 1983) ....................5

*Mars, Inc. v. Coin Acceptors, Inc.*,
513 F.Supp.2d 128 (D.N.J. 2007)....................7, 8

*Rite–Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed.Cir.) (en banc), *cert. denied*, 516 U.S. 867 (1995)....................2

**Statutes and Rules**

28 U.S.C. § 1961 (2017) ....................4

35 U.S.C. § 284 (2017) ....................1

## PRELIMINARY STATEMENT

Plaintiff Canon Inc.'s Motion for Supplemental Damages, Prejudgment Interest, And Post-Judgment Interest, (D.I. 671), (the "Supp. Damages Motion") overstates the purported supplemental damages owed to Plaintiff Canon Inc. ("Canon"), assumes as a certainty that Canon is entitled to pre-judgment interest, and miscalculates the amount of such interest. For these reasons, the Court should deny the Supp. Damages Motion.

As this Court is aware, Defendants strongly disagree with the jury's finding and award of damages to Canon for the reasons set forth in its other motions and post-trial submissions. For those same reasons, the Court should deny the Supp. Damages Motion. Should the Court agree, however, with the jury's finding and award of damages to Canon and find that Canon is entitled to supplemental damages, prejudgment interest, and post-judgment interest, that ruling should recognize that Canon (i) fails to properly utilize the net sales of accused products as the royalty base and (ii) improperly seeks a prejudgment interest rate that is based upon CI's borrowing rate rather than Canon, the patentee's, own cost of borrowing or the statutory T-bill rate.

## ARGUMENT

The Supp. Damages Motion is flawed in two significant respects. As an initial matter, the motion seeks a reasonable royalty for gross sales of allegedly infringing products, rather than the net sales as required. Similarly, the Supp. Damages Motion fails to recognize that Canon has already been fully compensated for any purported infringement through its royalty rate and simply assumes that an award prejudgment interest is automatic and then overstates the rate of such interest.

### I. THE SUPP. DAMAGES MOTION OVERSTATES CANON'S DAMAGES.

The patent statute provides for damages "adequate to compensate for the infringement." 35 U.S.C. § 284 (2017). The primary purpose of compensatory damages is to return the patent owner to the financial position he would have occupied but for the infringement. *See Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir.) (en banc), *cert. denied*, 516 U.S. 867 (1995) ("The general rule for determining actual damages to a patentee ... is to determine the sales and profits lost to the patentee because of the infringement").

During the trial, Canon's damages expert admitted that the proper royalty base for calculation of Canon's damages were the net sales of Defendants. (Trial. Tr., v.4, pp. 755, 776). In reviewing the financial information for CI, Canon's expert also agreed that, as of Q1 2014, GPI sold CI over 100,000 units, of which only 60,865 had

been sold by CI. (Trial Tr., v.4, p. 773-74). When questioned about the 44,420 units not sold by CI, Canon's expert speculated that such units were being maintained as "inventory" by CI as of that date. (Trial Tr., v.4, p. 774).

In support of the Supp. Damages Motion, Canon's expert provides an analysis of additional sales by GPI and CI from Q2 2014 through Q2 2015.[1] In this analysis, Canon's expert opines that GPI sold additional accused products to CI and CI sold ███ additional accused products to its customers during this period. (Declaration of Michael E. Tate Analysis of Post-Trial Damages ("Tate Decl."), ¶¶ 7-8, Exs. 4.0, 4.1). While Defendants may disagree with Canon's expert, taking his speculation as true results in the following:

- As of Q1 2014, CI had 44,420 units in inventory;
- Between Q2 2014 and Q2 2015, GPI sold ███ additional accused products to CI, (Tate Decl., Ex. 5.0), and thus CI had a total of ███ accused products from which it could make sales;
- Between Q2 2014 and Q2 2015, CI sold ███ additional accused products (Tate Decl., ¶ 8, Ex. 4.1);

---

[1] It is undisputed that GPI entered into a Consent Order effective September 2, 2015, that prevented importation or sale after importation of the accused products in this case and, accordingly, no sales of such products by CI or GPI occurred after this date.

- Accordingly, as of Q2 2015, there were [REDACTED] accused products in CI's inventory. It is undisputed, however, that these accused products could not be sold to an end user who would install the accused products in a Canon copier in the U.S. without violating the Consent Order. Accordingly, these accused products, which cannot be sold in the U.S. should be deducted in determining the appropriate royalty base, i.e., the net sales of GPI ;
- Considering these units, GPI's damages in the Tate Decl. are overstated by [REDACTED] units x $12/unit royalty or $[REDACTED].

Accordingly, the final amount of any damages owing by GPI to Canon cannot be more than $[REDACTED].

## II. THE SUPP. DAMAGES MOTION OVERSTATES CANON'S PREJUDGMENT INTEREST.

An award of prejudgment interest is not required in every case where a defendant is found to have infringed. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656 (1983). The district court has broad discretion to limit or deny an award of prejudgment interest where, for example, a patent owner is already adequately compensated for any infringement or has caused undue delay in enforcing its patent rights. *See id*. at 657.

The district court also has broad discretion to decide on the rate of prejudgment interest and whether it should be compounded or uncompounded. *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986). In determining the appropriate rate of prejudgment interest, the district court must be "guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" *Id*. (*citing Devex*, 461 U.S. at 655.) The purpose of awarding prejudgment interest is to make the patent owner whole by compensating it for "the forgone use" of the royalty payments that ***the owner*** did not receive but should have. *See Devex,* at 656 (emphasis added).

The burden lies on the patentee to affirmatively demonstrate the rate—any rate higher than the U.S. Treasury bill ("T-bill") rate applied to post-judgment interest pursuant to 28 U.S.C. § 1961 (2017)—that the patentee argues the Court should apply to prejudgment interest. *See, e.g., Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983).

While Defendants disagree that Canon is entitled to recover any damages or prejudgment interest on such damages, should the Court find that Canon is entitled to some amount of prejudgment interest, Defendants respectfully urge the Court to use its broad discretion and not award prejudgment interest "at the defendant's borrowing

rate" as Canon demands. (Memo. in Support of Supp. Damages Motion (the "Canon Br."), p. 5). Canon and its expert have not demonstrated why Canon is not utilizing Canon's borrowing rate—a rate that would accurately and fully compensate Canon for "the forgone use" of the royalty payments that Canon did not receive but should have. Again, this is information to which Canon—and its expert—should have access but have apparently chosen not to present.

Instead, Canon—without any analysis of the creditworthiness of GPI—relies upon the lower of the prime rate or CI's borrowing rate. In the primary case relied upon by Canon, the district court found that prejudgment interest based upon the prime rate, rather than the statutory T-bill rate, was appropriate because (i) "Ford's credit rating was downgraded from 'investment grade' to 'speculative grade,' and because lenders to Ford are now subject to 'high credit risk,'… and (ii) "Ford's financial performance has been in decline since 2008, and it has depleted its cash reserves." *Krippelz v. Ford Motor Co.*, 670 F. Supp. 2d 815, 818 (N.D. Ill. 2009). Here, there is no evidence regarding any concerns about the creditworthiness of GPI.[2] To the contrary, in seeking enhanced damages, Canon touts that GPI is "a publicly-traded, global supplier of aftermarket consumable products …, employing 500 people

---

2 As Canon has recognized, GPI is solely responsible for any damages awarded against CI in this action. (D.I. 644-1, p. 21-22).

…, and with sales of approximately $87 million for the year ending 2013." (D.I. 664-1, p. 21).

In *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F.Supp.2d 128, 134 (D.N.J. 2007), the district court noted the flaws in Canon's proposed lender-borrower relationship analogy,[3] highlighting the difference between the lender-borrower relationship and the licensor-licensee relationship. *Mars* explained that in the lender-borrower situation, the borrower is indebted to the lender for the entire loan at the very outset of the repayment schedule. *Id*., at 134. As a result, the prime rate is applied to the entire balance as it is amortized, making the borrower's first payment mostly interest. *Id.* In contrast, in the licensor-licensee situation, the licensee is not indebted for all yet-to-be-made royalty payments at the beginning of its royalty payment schedule. *Id.* As *Mars* explains, "[e]ach royalty payment compensates the licensor for the licensee's use of the patented product to that point in time ." *Id*. Thus, in the licensor-licensee relationship, the patentee's loss results from its lost ability to "either invest each royalty payment once it should have been received, or to avoid paying a high interest rate to borrow money-in other words, 'the forgone use' of the royalty payments." *Id*., at 135. This, then, is "the loss that prejudgment interest on infringement damages must compensate for, not the risk of default on an imaginary hypothetical loan." *Id.*

---

[3] Indeed, *Mars* addressed several of Canon's authorities supporting this analogy and explained the flaws in their reasoning. *Id*., at 134-35.

The district court further explained that the T-bill rate is a sensible "baseline investment rate,"[4] and the burden was upon the patentee to prove that it is entitled to a higher rate, "either because it had to borrow at a higher rate to cover the lost funds, or because it would have invested at a better rate," then a higher rate may be appropriate. *Id.*, at 136. The patentee, like Canon here, failed to make such a showing and, accordingly, the district court applied the T-bill rate. *Id*.

Because the Supreme Court's stated purpose of prejudgment interest is to compensate for the delay in the ***patentee's*** receipt of the damages or royalty payments and not to punish the infringer, *see Devex*, 461 U.S. at 656; *Bio-Rad*, 807 F.2d at 969, the more appropriate measure, as noted in *Mars*, is the actual investment rate Canon would have earned or the actual borrowing rate Canon would have avoided, had it received the royalty payments when the alleged infringing sales took place.

If the Court determines that an award of prejudgment interest is appropriate, it should recognize that Canon has come forward with no evidence of any lost ability to "either invest each royalty payment once it should have been received, or to avoid

---

[4] The district court also recognized that using the T-bill rate allows the court to avoid speculation about what the patentee might have done or not have done with the money. It stated that "because T–bills are a virtually risk-free investment, using the T–bill rate permits the Court to avoid the speculation involved with determining whether possibly higher-yielding, but riskier, investments would have been successful for the patent holder." *Mars,* at 136–37.

paying a high interest rate to borrow money-in other words, 'the forgone use' of the royalty payments" and exercise the Court's broad discretion to apply the statutory T-bill rate to that award. *See, e.g., Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997); *Mars* at 136.

## CONCLUSION

For the reasons above, Defendants oppose the Supp. Damages Motion and requests that the Court, at a minimum, reduce the damages award against GPI to $[redacted] and deny Canon's request for prejudgment interest. Alternatively, if the Court determines an award of prejudgment interest is appropriate, the Court should apply the statutory T-bill interest rate.

Dated: October 20, 2017

*<u>/s/ Bryan G. Harrison</u>*

Bryan G. Harrison
Georgia Bar No. 331750
bryan.harrison@lockelord.com

LOCKE LORD LLP
Terminus 200, Suite 1200
3333 Piedmont Road NE
Atlanta, GA 30305
Phone: (404) 870-4600
Fax: (404) 872-5547

Rory Radding
rory.raddding@lockelord.com
Joseph A. Farco
jfarco@lockelord.com

LOCKE LORD LLP
Brookfield Place
200 Vesey Street, 20th Fl
New York, NY 10281
Phone: 212-912-2858
Fax: 866-204-4563

*Attorneys for Defendants Color Imaging, Inc. and General Plastic Industrial Co., Ltd.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing brief has been prepared using one of the font and point selections approved by the Court in Local Rule 7.1D. This document was prepared using Times New Roman (14 point).

This 20th day of October, 2017.

/s/ Bryan G. Harrison
Bryan G. Harrison

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CANON INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| v. | ) | 1:11-cv-03855-AT |
| | ) | |
| COLOR IMAGING, INC. and | ) | |
| GENERAL PLASTIC INDUSTRIAL | ) | |
| CO., LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2017, I caused a copy of the within and foregoing REDACTED brief to be electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record in this action.

/s/ Bryan G. Harrison
Bryan G. Harrison